AO 245D (Rev. 09/17) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

12/20/18

UNITED STATES OF AMERICA
v.

Franklin Nunez

**Judgment in a Criminal Case**
(For **Revocation** of Probation or Supervised Release)

Case No. 13-cr-167

USM No. 68111-054

Lee Ginsberg
Defendant's Attorney

**THE DEFENDANT:**

☑ admitted guilt to violation of condition(s) 1 through 8 of the term of supervision.

☐ was found in violation of condition(s) count(s) ______ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | Operating a motor vehicle while intoxicated (felony) | 11/19/2017 |
| 2 | Operating a motor vehicle without an ignition interlock device | 11/19/2017 |
| 3 | Operating a motor vehicle while intoxicated (misdemeanor) | 11/19/2017 |
| 4 | Driving while ability impaired | 11/19/2017 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) ______ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.: 3361

Defendant's Year of Birth: 1978

City and State of Defendant's Residence:

12/20/2018
Date of Imposition of Judgment

[signature]
Signature of Judge

Richard J. Sullivan, U.S.C.J. by Designation
Name and Title of Judge

12/20/2018
Date

A1

DEFENDANT: Franklin Nunez
CASE NUMBER: 13-cr-167

## ADDITIONAL VIOLATIONS

| Violation Number | Nature of Violation | Violation Concluded |
|---|---|---|
| 5 | Leaving the scene of an accident | 11/19/2017 |
| 6 | Operating a motor vehicle without an ignition interlock device | 10/14/2018 |
| 7 | Aggravated unlicensed operation of a motor vehicle | 10/14/2018 |
| 8 | Driving a motor vehicle without permission of the Court | 10/14/2018 |

A2

DEFENDANT: Franklin Nunez
CASE NUMBER: 13-cr-167

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

24 months on each specification, to run concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:

that Supervisee be designated to a facility as close to New York City as possible with access to drug and alcohol rehabilitation programs and mental health treatment programs.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

- ☐ at ______________ ☐ a.m. ☐ p.m. on ______________
- ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

- ☐ before 2 p.m. on ______________
- ☐ as notified by the United States Marshal.
- ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ______________ to ______________

at ______________ with a certified copy of this judgment.

______________
UNITED STATES MARSHAL

By ______________
DEPUTY UNITED STATES MARSHAL

A3

DEFENDANT: Franklin Nunez
CASE NUMBER: 13-cr-167

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

life

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A4

DEFENDANT: Franklin Nunez
CASE NUMBER: 13-cr-167

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________ Date ____________

A5

DEFENDANT: Franklin Nunez
CASE NUMBER: 13-cr-167

## ADDITIONAL SUPERVISED RELEASE TERMS

(1) Supervisee shall participate for 6 months in an inpatient mental health and substance abuse treatment program approved by the United States Probation Office, which program will include testing to determine whether Supervisee has reverted to using drugs or alcohol. Supervisee must contribute to the cost of the services rendered based on his ability to pay and the availability of third-party payments. The Courts authorizes the release of available drug treatment and other evaluations and reports to the treatment provider.

(2) For the remainder of his term of supervised release, Supervisee shall participate in an outpatient program approved by the United States Probation Office, which program may include testing to determine whether Supervisee has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. Supervisee will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(3) For the remainder of his term of supervised release, Supervisee shall also participate in an outpatient mental health treatment program approved by the Probation Department. The Supervisee shall comply with the medication regimen, which may include injectable medication, prescribed by a licensed psychiatrist approved by the Probation Department. The Supervisee shall contribute to the cost of services rendered or any psychotropic medications prescribed, via co-payment or full payment, in an amount to be determined by the Probation Department, based upon Supervisee's ability to pay and/or the availability of third party payment.

(4) Supervisee shall not operate a motor vehicle of any kind.

(5) Supervisee shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. Supervisee shall inform any other residents that the premises may be subject to search pursuant to this condition.

(6) Supervisee shall provide the probation officer with access to any requested financial information.

(7) Supervisee is to report to the nearest Probation Office within 24 hours of release from custody.

(8) Supervisee is to be supervised in the district of his residence.

CLOSED,APPEAL,ECF,PRIOR

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CRIMINAL DOCKET FOR CASE #: 1:13-cr-00167-RJS-1**

Case title: USA v. Nunez
Magistrate judge case number: 1:13-mj-00375-UA

Date Filed: 03/11/2013
Date Terminated: 03/20/2014

---

Assigned to: Judge Richard J. Sullivan

Appeals court case number: 19-0037 USCA 2nd Circuit

**Defendant (1)**

**Franklin Nunez**
*TERMINATED: 03/20/2014*
*also known as*
"Frank,"
*TERMINATED: 03/20/2014*

represented by **Lee Alan Ginsberg**
Freeman Nooter & Ginsberg
75 Maiden Lane, Suite 503
New York, NY 10038
(212) 608-0808
Fax: 212 962 9696
Email: leeloulaw@aol.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| Pending Counts | Disposition |
|---|---|
| 21:846=ND.F CONSPIRACY TO DISTRIBUTE NARCOTICS (1) | Imprisonment for a total term of 42 Months. Supervised release for a term of Three Years. |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| Complaints | Disposition |
|---|---|
| 21:846:CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCE. | |

---

**Plaintiff**

**USA**

represented by **Christopher Jordan Clore**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
212-637-1063
Fax: 212-637-2527
Email: christopher.clore@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justina Louise Geraci**

A7

United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2468
Fax: (212) 637-2527
Email: Justina.Geraci@USDOJ.GOV
*ATTORNEY TO BE NOTICED*

**Ni Qian**
DOJ-USAO
1 St. Andrew's Plaza
New York, NY 10007
212-637-2364
Email: ni.qian@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/07/2013 | | Arrest of Franklin Nunez. (gq) [1:13-mj-00375-UA] (Entered: 02/11/2013) |
| 02/08/2013 | 1 | COMPLAINT as to Franklin Nunez (1) in violation of 21 U.S.C. 846. (Signed by Magistrate Judge Debra C. Freeman) (gq) [1:13-mj-00375-UA] (Entered: 02/11/2013) |
| 02/08/2013 | 2 | CJA 23 Financial Affidavit by Franklin Nunez. Approved. Appointed CJA atty Lee Ginsberg. (Signed by Judge Magistrate Judge Debra C. Freeman) (gq) [1:13-mj-00375-UA] (Entered: 02/11/2013) |
| 02/08/2013 | | Attorney update in case as to Franklin Nunez. Attorney Lee Alan Ginsberg for Franklin Nunez added. (gq) [1:13-mj-00375-UA] (Entered: 02/11/2013) |
| 02/08/2013 | | Minute Entry for proceedings held before Magistrate Judge Debra C. Freeman:Initial Appearance as to Franklin Nunez held on 2/8/2013. Deft appears with CJA atty Lee Ginsberg. AUSA Justina L. Geraci present for the gov't. Detention on consent without prejudice. ( Preliminary Hearing set for 3/11/2013 at 10:00 AM before Judge Unassigned.) (gq) [1:13-mj-00375-UA] (Entered: 02/11/2013) |
| 02/08/2013 | 3 | MEDICAL ATTENTION ORDER FORM as to Franklin Nunez. (Signed by Magistrate Judge Debra C. Freeman on 2/08/2013) Copies Mailed By Chambers. (gq) [1:13-mj-00375-UA] (Entered: 02/11/2013) |
| 02/08/2013 | 5 | CJA 20 as to Franklin Nunez: Appointment of Attorney Lee Ginsberg for Franklin Nunez. (Signed by Magistrate Judge Debra C. Freeman on 3/11/13) The CJA clerk has mailed the original and sent a copy to the file.(kwi) (Entered: 03/15/2013) |
| 03/11/2013 | 4 | INDICTMENT FILED as to Franklin Nunez (1) count(s) 1. (jm) (Entered: 03/12/2013) |
| 03/11/2013 | | Case Designated ECF as to Franklin Nunez. (jm) (Entered: 03/12/2013) |
| 03/19/2013 | | Minute Entry for proceedings held before Magistrate Judge Michael H. Dolinger: Arraignment as to Franklin Nunez (1) Count 1 held on 3/19/2013. Defendant present with CJA attorney Janet Mace for Lee Ginsberg. AUSA Justina Geraci present for the government. Defendant is arraigned and enters a plea of Not Guilty. Pretrial Conference set for 4/2/2013 at 04:00 PM before Judge Richard J. Sullivan. Time excluded until 4/2/13. (jbo) (Entered: 03/19/2013) |
| 03/19/2013 | | Minute Entry for proceedings held before Magistrate Judge Michael H. Dolinger: Plea entered by Franklin Nunez (1) Count 1 Not Guilty. (jbo) (Entered: 03/19/2013) |
| 04/03/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Status Conference as to Franklin Nunez held on 4/3/2013. Defense counsel Janet Mace present with Defendant, in custody. AUSA Justina Geraci present for the government. Court Reporter present. Marshals present. The Court set a status conference for May 2 at 11:30 a.m. in Courtroom 905. The Court excluded time through May 2, 2013. (jbo) (Entered: 04/03/2013) |
| 04/03/2013 | 6 | **FILING ERROR - WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY** - NOTICE OF ATTORNEY APPEARANCE: Lee Alan Ginsberg appearing for Franklin Nunez. Appearance Type: CJA Appointment. (Ginsberg, Lee) Modified on 4/4/2013 (ka). Modified on 4/4/2013 (ka). (Entered: 04/03/2013) |
| 04/04/2013 | | *****NOTE TO ATTORNEY TO RE-FILE DOCUMENT - PDF ERROR. Note to Attorney Lee Alan Ginsberg as to Franklin Nunez to RE-FILE Document 6 Notice of Attorney Appearance - Defendant.***NOTE: Janet Mace admitted to appear in this case for counsel for Franklin Nunez. (ka)** (Entered: 04/04/2013) |

A8

| | | |
|---|---|---|
| 05/02/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Status Conference as to Franklin Nunez held on 5/2/2013, as to Franklin Nunez( Motions due by 5/31/2013., Replies due by 6/14/2013., Opposition due by 6/7/2013, Status Conference set for 6/28/2013 at 04:30 PM before Judge Richard J. Sullivan.) Defendant was present, in custody, with counsel Lee Ginsberg and Janet Mace. Marshals were present. AUSA Ian McGinley was present for the government. Court reporter was present. The Court set a briefing schedule for Defendants contemplated motion to suppress evidence: motion by May 31, 2013; opposition by June 7; reply by June 14. The Court set the next conference date for June 28 at 4:30 p.m. The Court exclude time through June 28. (jw) (Entered: 05/06/2013) |
| 06/28/2013 | 7 | ORDER as to Franklin Nunez. Upon the application of the United States of America, by and through AUSA Justina L. Geraci, and with the consent of defendant Franklin Nunez, a/k/a "Frank," by and through his counsel, Lee Ginsberg, Esq. and Janet Mace, Esq. of Freeman, Nooter & Ginsberg, it is hereby ORDERED that the next status conference in this matter is set for 10:30 a.m. on July 18, 2013, and that the time between June 28, 2013 and July 18, 2013 is hereby excluded under the Speedy Trial Act, 18 U.S.C. Section 3161(h)(7)(A), in the interests of justice. (Signed by Judge Richard J. Sullivan on 6/28/2013)(bw) (Entered: 06/28/2013) |
| 07/10/2013 | 8 | ORDER as to Franklin Nunez ( Pretrial Conference set for 7/26/2013 at 02:30 PM before Judge Richard J. Sullivan.) Due to the Court's trial schedule the week of July 15, 2013, IT IS HEREBY ORDERED THAT the conference scheduled for July 18 is adjourned to July 26 at 2:30 p.m. (Signed by Judge Richard J. Sullivan on 7/10/2013)(jw) (Entered: 07/11/2013) |
| 07/26/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Pretrial Conference as to Franklin Nunez held on 7/26/2013 as to Franklin Nunez. Defense counsel Janet Mace present with Defendant in custody. AUSA Justina Geraci present for the government. Marshals present. Court reporter present. The Court set a plea hearing for August 9, 2013 at 3:00 p.m. and excluded time through that date. (jw) (Entered: 07/29/2013) |
| 08/09/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Change of Plea Hearing as to Franklin Nunez held on 8/9/2013. Plea entered by Franklin Nunez (1) Guilty as to Count 1. Plea before the Hon. Richard J. Sullivan on 8/9/2013 in Courtroom 905. Defense counsel Janet Mace present with Defendant in custody. AUSA Geraci present for the government. Marshals present. Court reporter present. The Court accepted Defendants plea to Count One of the Indictment. Sentencing is set for December 20, 2013 at 2:00 p.m. (jbo) (Entered: 08/12/2013) |
| 08/09/2013 | | Change of Not Guilty Plea to Guilty Plea as to Franklin Nunez (1) Count 1. (jbo) (Entered: 08/12/2013) |
| 09/12/2013 | 9 | TRANSCRIPT of Proceedings as to Franklin Nunez re: Plea held on 8/9/13 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Patricia Nilsen, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/7/2013. Redacted Transcript Deadline set for 10/18/2013. Release of Transcript Restriction set for 12/16/2013. (Rodriguez, Somari) (Entered: 09/12/2013) |
| 09/12/2013 | 10 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Franklin Nunez. Notice is hereby given that an official transcript of a Plea proceeding held on 8/9/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Rodriguez, Somari) (Entered: 09/12/2013) |
| 12/12/2013 | 11 | ORDER asas to Franklin Nunez ( Sentencing set for 2/28/2014 at 02:00 PM before Judge Richard J. Sullivan.) The Court is in receipt of Defendant's unopposed request to adjourn sentencing, originally scheduled for Friday, December 20, 2013, to late February 2014. IT IS HEREBY ORDERED THAT the sentencing is adjourned to Friday, February 28, 2014 at 2:00 p.m. Defense counsel's submission is due on Friday, February 14, 2014. The Government's submission is due on Friday, February 21, 2014. SO ORDERED. (Signed by Judge Richard J. Sullivan on 12/11/2013)(jw) (Entered: 12/12/2013) |
| 02/24/2014 | 12 | ORDER: As to Franklin Nunez. In an Order dated December 11, 2013, the Court directed the parties to file sentencing submissions on behalf of Defendant on February 14, 2014 and on behalf of the Government on February 21, 2014.(Doc. No. 11.) The Court is in receipt of the Defendant's sentencing submission, and directs Defendant to file it on ECF in accordance with the Court's Individual Rules. The Court has yet to receive a sentencingsubmission from the Government, and therefore assumes that the Government consents to Defendant's request for a below-guidelines sentence. If that is incorrect, the Government is directed to file a written submission in response to Defendant's sentencing submission no later than the close of business onFebruary 25, 2014. SO ORDERED. (Signed by Judge Richard J. Sullivan on 2/24/2014)(dnd) (Entered: 02/25/2014) |
| 02/25/2014 | 13 | Sentencing Letter by USA as to Franklin Nunez addressed to Judge Richard J. Sullivan from AUSA Justina L. Geraci dated February 25, 2014 re: Sentencing of Franklin Nunez. (Geraci, Justina) (Entered: 02/25/2014) |

A9

| | | |
|---|---|---|
| 02/27/2014 | 14 | ENDORSED LETTER as to Franklin Nunez addressed to Judge Richard J. Sullivan from Lee Ginsberg dated 2/27/2014 re: To request an adjournment of the sentencing that is scheduled for Friday, February 28, 2014. ENDORSEMENT: The adjournment request is DENIED. (Signed by Judge Richard J. Sullivan on 2/27/14)(jw) (Entered: 02/27/2014) |
| 02/28/2014 | 15 | SENTENCING SUBMISSION by Franklin Nunez. (Attachments: # 1 Exhibit Family Letters)(Ginsberg, Lee) (Entered: 02/28/2014) |
| 02/28/2014 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Sentencing held on 2/28/2014 for Franklin Nunez (1) Count 1. Sentencing before the Hon. Richard J. Sullivan on 2/28/2014 in Courtroom. 905. AUSA Justina Geraci present for the government. Lee Ginsburg present for the defense. Defendant present and in custody. Marshals present. Court reporter present. Interpreter present. The Court sentenced Defendant as set forth in the Order of Judgment. (ajc) (Entered: 03/05/2014) |
| 03/20/2014 | 16 | FILED JUDGMENT IN A CRIMINAL CASE as to Franklin Nunez (1), Pleaded guilty to Count(s) 1, Imprisonment for a total term of 42 Months. Supervised release for a term of Three Years. The court makes the following recommendations to the Bureau of Prisons: Defendant be housed as near as possible to New York Cityof. Defendant be housed in a facility where he may participate in the BOP's 500-hour Residential Drug Abuse Program (RDAP). Special Assessment of $100. (Signed by Judge Richard J. Sullivan on 3/20/14)(jw) (Entered: 03/20/2014) |
| 03/26/2014 | 17 | TRANSCRIPT of Proceedings as to Franklin Nunez re: Sentence held on 2/28/14 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/21/2014. Redacted Transcript Deadline set for 5/1/2014. Release of Transcript Restriction set for 6/27/2014. (Rodriguez, Somari) (Entered: 03/26/2014) |
| 03/26/2014 | 18 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Franklin Nunez. Notice is hereby given that an official transcript of a Sentence proceeding held on 2/28/14 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Rodriguez, Somari) (Entered: 03/26/2014) |
| 10/10/2014 | 19 | LETTER addressed to Judge Richard J. Sullivan from Defendant (13-Cr-167-01) Franklin Nunez, not dated re: I'm writing this letter inquiring about the bill passed by Congress on July 18th 2014 regarding the 2 points level reduction, for non violent drug offenders. I would like to know if my case could be reviewed to determine if I quality for the reduction. (bw) (Entered: 10/10/2014) |
| 11/17/2014 | 20 | ORDER as to Franklin Nunez. On February 28, 2014, Defendant was sentenced principally to a term of imprisonment of 42 months. (Doc. No. 16.) On October 10, 2014, Defendant filed a motion requesting this Court reconsider the original sentence in light of "the bill passed by congress on July 18, 2014 regarding the 2 points level reduction for nonviolent drug offenders." (Doc. No. 19.). Accordingly, Defendant is ineligible for a sentencing reduction pursuant to the amendment because Defendant's original sentence - a term of imprisonment of 42 months - is already lower than the bottom of his amended guideline range. (Signed by Judge Richard J. Sullivan on 11/17/14)(jw) (Entered: 11/18/2014) |
| 09/01/2016 | 21 | ORDER as to Franklin Nunez. The Court is in receipt of a memorandum from the U.S. Probation Department indicating that Mr. Nunez allegedly drove under the influence on August 9, 2016 and has been charged in Queens County Criminal Court with Criminal Mischief - Recklessly Damaged Property Greater than $250, among other things. IT IS HEREBY ORDERED that the parties in this case, including Mr. Nunez personally, shall attend a conference on September 20, 2016 at 11:00 a.m. in Courtroom 905 of the Thurgood Marshall United States District Court for the Southern District of New York, 40 Foley Square, New York, New York. IT IS FURTHER ORDERED that U.S. Probation Officer Stephen Scherzer, who is in charge of supervising Defendant in the Eastern District of New York, shall also attend. SO ORDERED. (Signed by Judge Richard J. Sullivan on 9/1/2016)(bw) (Entered: 09/02/2016) |
| 09/20/2016 | 22 | PROBATION FORM PETITION as to (13-Cr-167-01) Franklin Nunez. THE COURT ORDERS: The Modification of the Conditions of Supervised Release, to include; For a period of 2 months, the defendant shall be confined to bis/her residence, commencing on a date approved by the U.S.Probation Office. The defendant shall be required to be at his/her residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and at other such times as may be specifically authorized, in advance, by the U.S.Probation Office. The defendant shall wear an electronic monitoring device and follow all location monitoring procedures. The defendant shall permit the Probation Officer access to the residence at all times and maintain a telephone without any custom services at the residence. During this period, the defendant may be placed on a curfew if the U.S. Probation Office determines that this less restrictive form of location monitoring is appropriate. The defendant shall pay all the costs associated with the location monitoring services and shall disclose all financial information and documents to the Probation |

| | | |
|---|---|---|
| | | Department to assess his/her ability to pay. (Signed by Judge Richard J. Sullivan on 9/20/2016)(bw) (Entered: 09/20/2016) |
| 09/20/2016 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Initial Appearance re: Revocation of Supervised Release as to Franklin Nunez held on 9/20/2016. AUSA Justina Geraci present for the government. Lee Ginsburg present for Defendant, who was also present and was not in custody. Court reporter present. Interpreter present. As set forth on the record, the Court endorsed the modification to which the parties consented. (jbo) (Entered: 09/21/2016) |
| 02/07/2018 | 23 | ENDORSED LETTER as to Franklin Nunez addressed to Judge Richard J. Sullivan from Louis M. Freeman dated 2/7/2018 re: Counsel writes with the consent of the probation officer by Paula Dunn and the government by Justina Geraci to request the court adjourn the violation hearing from February 9, 2018 until the week of February 20, 2018, preferably during the afternoon of February 23, 2018, or assign new counsel. ENDORSEMENT: The conference is adjourned to February 22, 2018 at 3:30 p.m. SO ORDERED. (Status Conference set for 2/22/2018 at 03:30 PM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 2/7/2018) (lnl) (Entered: 02/08/2018) |
| 02/22/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Revocation of Supervised Release as to Franklin Nunez held on 2/22/2018. Supervisee, who was not in custody, was present with Attorney Lee Ginsberg. AUSA Justina Geraci present. Court reporter present. Probation Officers Jessica Roman (EDNY) and Paula Dunn present. Supervisee admitted to five violations. As stated on the record and set forth in a separately docketed order, the Court endorsed two modifications to Supervisees supervised release. The conference was adjourned for sentencing to May 18, 2018 at 4:00 p.m. The Supervisee shall file his sentencing submission no later than May 4, 2018, and the government shall file its submission no later than May 11, 2018. The Probation Office shall update the Court on the Supervisees progress on March 30, 2018, and again on April 30, 2018 (jw) (Entered: 02/23/2018) |
| 02/23/2018 | 24 | ORDER as to Franklin Nunez. Accordingly, IT ISHEREBY ORDERED THAT the Supervisee shall participate in a mental health treatment program approved by the Probation Department. The Supervisee shall comply with the medication regimen, which may include injectable medication, prescribed by a licensed psychiatrist approved by the Probation Department. The Supervisee shall contribute to the cost of services rendered or any psychotropic medications prescribed, via co-payment or full payment, in an amount to be determined by the Probation Department, based upon the defendant's ability to pay and/or the availability of third party payment. IT IS FURTHER ORDERED THAT the Supervisee is prohibited from driving a motor vehicle of any kind until further order of the Court. (Signed by Judge Richard J. Sullivan on 2/23/18)(jw) (Entered: 02/23/2018) |
| 03/01/2018 | 25 | NOTICE OF ATTORNEY APPEARANCE Christopher Jordan Clore appearing for USA. (Clore, Christopher) (Entered: 03/01/2018) |
| 03/28/2018 | 26 | LETTER MOTION addressed to Judge Richard J. Sullivan from Lee Ginsberg dated 3/28/18 re: Travel . Document filed by Franklin Nunez. (Ginsberg, Lee) (Entered: 03/28/2018) |
| 03/28/2018 | 27 | MEMO ENDORSED granting 26 LETTER MOTION requesting permission to travel as to Franklin Nunez (1). Endorsement: IT IS HEREBY ORDERED THAT the conditions of Supervisee's bond shall be modified to permit him to travel to the Dominican Republic for no longer than one week to visit his father. (Signed by Judge Richard J. Sullivan on 3/28/18) (jbo) (Entered: 03/28/2018) |
| 05/10/2018 | 28 | ENDORSED LETTER as to Franklin Nunez addressed to Judge Richard J. Sullivan, from Lee Ginsberg dated 5/8/2018 re: Defense counsel writes to request that the Court adjourn the violation hearing previously set for May 18, 2018 until the week of June 18, 2018. ENDORSEMENT: IT IS HEREBY ORDERED THAT the sentencing in this matter scheduled for May 18, 2018 is adjourned to Thursday, June 21, 2018 at 1:00 p.m. Any party who wishes to submit a sentencing submission shall do so no later than June 14, 2018. (Signed by Judge Richard J. Sullivan on 5/10/2018)(lnl) (Entered: 05/11/2018) |
| 05/31/2018 | 29 | ORDER as to Franklin Nunez: Due to a conflict on the Court's calendar, IT IS HEREBY ORDERED THAT the sentencing previously scheduled for Thursday, June 21, 2018 at 1:00 p.m is adjourned to 3:00 p.m. that same day. The Court regrets any inconvenience to the parties caused by this adjournment. (Sentencing set for 6/21/2018 at 03:00 PM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 5/31/2018) (lnl) (Entered: 06/01/2018) |
| 06/13/2018 | 30 | SEALED DOCUMENT placed in vault. (rz) (Entered: 06/13/2018) |
| 06/20/2018 | 31 | MEMO ENDORSEMENT as to Franklin Nunez ( Revocation Hearing set for 7/30/2018 at 02:30 PM before Judge Richard J. Sullivan) re: To request an adjournment of the VOSR hearing date in the above case scheduled for June 21, 2018 to a date and time convenient to the Court after July 11, 2018...ENDORSEMENT...It is hereby ORDERED that the sentencing scheduled for June 21, 2018 is adjourned to July 30, 2018 at 2:30pm (Signed by Judge Richard J. Sullivan on 6/20/18)(jw) (Entered: 06/20/2018) |

A 11

| | | |
|---|---|---|
| 07/25/2018 | 32 | ORDER as to Franklin Nunez: Due to a conflict on the Court's calendar, IT IS HEREBY ORDERED THAT the sentencing previously scheduled for Monday, July 30, 2018 is adjourned to Monday, August 6, 2018 at 3 :00 p.m. The Court regrets any inconvenience to the parties caused by this adjournment. (Final Hearing re Revocation of Supervised Release set for 8/6/2018 at 03:00 PM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 7/25/2018) (lnl) (Entered: 07/26/2018) |
| 07/27/2018 | 33 | LETTER MOTION addressed to Judge Richard J. Sullivan from Lee Ginsberg dated 07/27/2018 re: Adjournment of VOSR Sentence . Document filed by Franklin Nunez. (Ginsberg, Lee) (Entered: 07/27/2018) |
| 07/27/2018 | 34 | ORDER as to Franklin Nunez (1) granting 33 LETTER MOTION addressed to Judge Richard J. Sullivan from Lee Ginsberg dated 07/27/2018 re: Adjournment of VOSR Sentence. IT IS HEREBY ORDERED THAT the sentencing scheduled for August 6, 2018 is adjourned to Friday, October 12, 2018 at 4:00 p.m. (Signed by Judge Richard J. Sullivan on 7/27/2018) (lnl) (Entered: 07/30/2018) |
| 07/27/2018 | | Set/Reset Hearings as to Franklin Nunez: Final Hearing re Revocation of Supervised Release set for 10/12/2018 at 04:00 PM before Judge Richard J. Sullivan. (lnl) (Entered: 07/30/2018) |
| 09/27/2018 | 35 | ENDORSED LETTER as to Franklin Nunez addressed to Judge Richard J. Sullivan, from Lee Ginsberg dated 9/27/2018 re: Defense counsel writes to request an adjournment of sentencing. ENDORSEMENT: IT IS HEREBY ORDERED THAT the sentencing scheduled for Friday, October 12, 2018 is adjourned to Tuesday, November 20, 2018 at 2:30 p.m. (Final Hearing re Revocation of Supervised Release set for 11/20/2018 at 02:30 PM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 9/27/2018) (ap) (Entered: 09/28/2018) |
| 11/02/2018 | 36 | ORDER as to Franklin Nunez: IT IS HEREBY ORDERED THAT the sentencing scheduled for November 20, 2018 at 2:30 p.m. is adjourned sine die. Instead, the parties shall appear for a conference on Monday, November 5, 2018 at 2:30 p.m. (Status Conference set for 11/5/2018 at 02:30 PM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 11/2/2018) (ap) (Entered: 11/02/2018) |
| 11/05/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Status Conference as to Franklin Nunez held on 11/5/2018. Attorney Lee Ginsberg present for Supervisee. AUSA Christopher Clore present. Probation Officers Jessica Roman and Paula Dunn present. Court reporter present. The Court issued a warrant in light of the fact that Supervisee was not present at the conference. (jbo) (Entered: 11/06/2018) |
| 11/21/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Preliminary Revocation Hearing re: Supervised Release as to Franklin Nunez held on 11/21/2018. VOSR Arraignment. Supervisee, in custody, present with Attorney John Kaley. AUSA Christopher Clore present. Probation Officers Jessica Roman and Paula Dunn present. Court reporter present. The Court presented Supervisee on the three new specifications set forth in Probations amended violation report, and Supervisee denied the specifications. The Court scheduled a hearing for December 7, 2018 at 2:30 p.m. The Court denied Supervisee's request for bail. (bw) (Entered: 11/21/2018) |
| 11/21/2018 | | ORAL ORDER as to Franklin Nunez. Status Conference set for 12/7/2018 at 02:30 PM before Judge Richard J. Sullivan. (bw) (Entered: 11/21/2018) |
| 12/07/2018 | 38 | ENDORSED LETTER as to Franklin Nunez addressed to Judge Richard J. Sullivan, from Lee Ginsberg dated 12/3/2018 re: Defense counsel writes to adjourn the sentencing and other matters. ENDORSEMENT: IT IS HEREBY ORDERED THAT the hearing scheduled for Friday, December 7, 2018 is adjourned, and that the parties shall appear on Thursday, December 20, 2018 at 2:30 p.m., at which time the Supervisee is expected to admit to the new specifications set forth in Probation's amended violation report and proceed to sentencing. IT IS FURTHER ORDERED THAT the parties shall file their sentencing submissions no later than December 13, 2018. In light of the privacy interests implicated by the materials attached to Supervisee's letter, the Court concludes that the presumption in favor of open records has been overcome. See United States v. Amodeo, 71 F. 3d 1044, 1050 (2d Cir. 1995). Accordingly, those materials shall be filed under seal. However, IT IS FURTHER ORDERED THAT Supervisee's request to file this letter under seal is DENIED without prejudice to renewal. If Supervisee wishes to renew his request, he must articulate with specificity why he believe that the presumption in favor of open records has been overcome. See id. In an excess of caution, the Court will defer docketing this letter and order until December 7, 2018. (Status Conference set for 12/20/2018 at 02:30 PM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 12/4/2018) (ap) Modified on 12/10/2018 (ap). (Entered: 12/07/2018) |
| 12/13/2018 | 39 | Sentencing Letter by USA as to Franklin Nunez addressed to Judge Richard J. Sullivan from Ni Qian dated 12/13/2018 re: Franklin Nunez. (Qian, Ni) (Entered: 12/13/2018) |
| 12/14/2018 | 40 | SENTENCING SUBMISSION by Franklin Nunez. (Ginsberg, Lee) (Entered: 12/14/2018) |
| 12/14/2018 | 41 | TRANSCRIPT of Proceedings as to Franklin Nunez re: Violation of Supervised Release held on 2/22/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for |

A12

| | | |
|---|---|---|
| | | Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/4/2019. Redacted Transcript Deadline set for 1/14/2019. Release of Transcript Restriction set for 3/14/2019. (McGuirk, Kelly) (Entered: 12/14/2018) |
| 12/14/2018 | 42 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Franklin Nunez. Notice is hereby given that an official transcript of a Violation of Supervised Release proceeding held on 2/22/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/14/2018) |
| 12/14/2018 | 43 | TRANSCRIPT of Proceedings as to Franklin Nunez re: Violation of Supervised Release held on 9/20/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/4/2019. Redacted Transcript Deadline set for 1/14/2019. Release of Transcript Restriction set for 3/14/2019. (McGuirk, Kelly) (Entered: 12/14/2018) |
| 12/14/2018 | 44 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Franklin Nunez. Notice is hereby given that an official transcript of a Violation of Supervised Release proceeding held on 9/20/16 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/14/2018) |
| 12/14/2018 | 45 | TRANSCRIPT of Proceedings as to Franklin Nunez re: Violation of Supervised Release held on 11/5/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/4/2019. Redacted Transcript Deadline set for 1/14/2019. Release of Transcript Restriction set for 3/14/2019. (McGuirk, Kelly) (Entered: 12/14/2018) |
| 12/14/2018 | 46 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Franklin Nunez. Notice is hereby given that an official transcript of a Violation of Supervised Release proceeding held on 11/5/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/14/2018) |
| 12/14/2018 | 47 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - MOTION to Continue . Document filed by Franklin Nunez. (Ginsberg, Lee) Modified on 12/17/2018 (ka). (Entered: 12/14/2018) |
| 12/17/2018 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Franklin Nunez: Notice to Attorney Ginsberg, Lee to RE-FILE Document 47 MOTION to Continue. Use the event type Letter Motion found under the event list Motions. (ka)** (Entered: 12/17/2018) |
| 12/17/2018 | 48 | LETTER MOTION addressed to Judge Richard J. Sullivan from Lee Ginsberg dated 12/14/2018 re: Hearing . Document filed by Franklin Nunez. (Ginsberg, Lee) (Entered: 12/17/2018) |
| 12/18/2018 | 49 | NOTICE OF ATTORNEY APPEARANCE Ni Qian appearing for USA. (Qian, Ni) (Entered: 12/18/2018) |
| 12/18/2018 | 50 | MEMO ENDORSEMENT as to Franklin Nunez on re: 48 LETTER MOTION filed by Franklin Nunez, addressed to Judge Richard J. Sullivan from Attorney Lee Ginsberg dated 12/14/2018 re: Hearing. The court adjourned the proceedings in this case to December 20, 2018 at 2:30. With the consent of the government, I respectfully ask that this matter be scheduled for 4:00 pm on the 20th. ENDORSEMENT: IT IS HEREBY ORDERED THAT the sentencing scheduled for Thursday, December 20, 2018 at 2:30 p.m. is adjourned to 4:00 p.m. on that same day. SO ORDERED: (Signed by Judge Richard J. Sullivan on 12/18/2018)(bw) (Entered: 12/18/2018) |
| 12/18/2018 | | Terminate Deadlines and Hearings as to Franklin Nunez: Terminated Status Conference set for 12/20/2018 at 02:30 PM before Judge Richard J. Sullivan. (bw) (Entered: 12/18/2018) |
| 12/19/2018 | 51 | ORDER as to Franklin Nunez. Due to a conflict on the Court's calendar, IT IS HEREBY ORDERED THAT the sentencing previously scheduled for Thursday, December 20, 2018 at 4:00 p.m. is rescheduled to 3:00 p.m. that same day. The Court regrets any inconvenience to the part ies caused by thi s adjournment. SO ORDERED. (Signed by Judge Richard J. Sullivan on 12/19/2018)(bw) (Entered: 12/19/2018) |

A13

| | | |
|---|---|---|
| 12/20/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Final Hearing re Revocation of Supervised Release as to Franklin Nunez held on 12/20/2018. Supervisee, in custody, present with Attorney Lee Ginsberg. AUSA Ni Qian present. Probation Officers Jessica Roman and Claudell Brehon present. Court reporter present. Supervisee admitted to the three new specifications in Probation's amended violation report. The Court sentenced Supervisee as set forth in the Order of Judgment. (jbo) (Entered: 12/21/2018) |
| 12/20/2018 | 52 | JUDGMENT IN A CRIMINAL CASE (for Revocation of Probation or Supervised Release) as to Franklin Nunez (1). THE DEFENDANT: admitted guilt to violation of conditions 1 through 8 of the term of supervision. IMPRISONMENT: 24 months on each specification, to run concurrently. The court makes the following recommendations to the Bureau of Prisons: that Supervisee be designated to a facility as close to New York City as possible with access to drug and alcohol rehabilitation programs and mental health treatment programs. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: life. See ADDITIONAL SUPERVISED RELEASE TERMS. (Signed by Judge Richard J. Sullivan on 12/20/2018) (ap) (Entered: 12/21/2018) |
| 12/27/2018 | 53 | TRANSCRIPT of Proceedings as to Franklin Nunez re: Conference held on 11/21/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Sonya Ketter Moore, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/17/2019. Redacted Transcript Deadline set for 1/28/2019. Release of Transcript Restriction set for 3/27/2019. (McGuirk, Kelly) (Entered: 12/27/2018) |
| 12/27/2018 | 54 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Franklin Nunez. Notice is hereby given that an official transcript of a Conference proceeding held on 11/21/18 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/27/2018) |
| 01/03/2019 | 55 | NOTICE OF APPEAL by Franklin Nunez from 52 Amended Judgment. (tp) (Entered: 01/03/2019) |
| 01/03/2019 | | Appeal Remark as to Franklin Nunez re: 55 Notice of Appeal - Final Judgment. APPEAL FEE WAIVED. ATTORNEY CJA. (tp) (Entered: 01/03/2019) |
| 01/03/2019 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Franklin Nunez to US Court of Appeals re: 55 Notice of Appeal - Final Judgment. (tp) (Entered: 01/03/2019) |
| 01/03/2019 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Franklin Nunez re: 55 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 01/03/2019) |
| 01/04/2019 | 56 | NOTICE OF APPEAL *(DUPLICATE)* by Franklin Nunez from 52 Amended Judgment. (tp) (Entered: 01/07/2019) |
| 01/04/2019 | | Appeal Remark as to Franklin Nunez re: 56 Notice of Appeal - Final Judgment USCA Case Number 19-0037. APPEAL FEE WAIVED. ATTORNEY CJA already filed Mr. Nunez's 55 NOA on 1/3/2019. (tp) (Entered: 01/07/2019) |
| 01/04/2019 | | USCA Case Number 19-0037 from the USCA 2nd Circuit as to Franklin Nunez, assigned to 56 Notice of Appeal - Final Judgment filed by Franklin Nunez, 55 Notice of Appeal - Final Judgment filed by Franklin Nunez. (tp) (Entered: 01/07/2019) |
| 01/07/2019 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Franklin Nunez to US Court of Appeals re: 56 Notice of Appeal - Final Judgment. (tp) (Entered: 01/07/2019) |
| 01/07/2019 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Franklin Nunez re: 56 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 01/07/2019) |


**PACER Service Center**

**Transaction Receipt**

01/23/2019 12:40:55

| | | | |
|---|---|---|---|
| **PACER Login:** | snedens66 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-cr-00167-RJS |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |


A 14

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

**United States District Court**

Southern District of New York

RECEIVED
JAN 03 2019
S.D.N.Y. - APPEALS

Caption:
United States of America v.

Franklin Nunez

Docket No.: 13 CR 167
Honorable Richard J. Sullivan
(District Court Judge)

Notice is hereby given that Franklin Nunez appeals to the United States Court of Appeals for the Second Circuit from the judgment [✓], other [ ] ______ (specify)
entered in this action on December 20, 2018 (date)

This appeal concerns: Conviction only [ ] Sentence only [✓] Conviction & Sentence [ ] Other [ ]

Defendant found guilty by plea [✓] trial [ ] N/A [ ]

Offense occurred after November 1, 1987? Yes [✓] No [ ] N/A [ ]

Date of sentence: December 20, 2018 N/A [ ]

Bail/Jail Disposition: Committed [✓] Not committed [ ] N/A [ ]

Appellant is represented by counsel? Yes [✓] No [ ] If yes, provide the following information:

Defendant's Counsel: Lee A. Ginsberg

Counsel's Address: 75 Maiden Lane, Suite 503
New York, New York 10038

Counsel's Phone: 212-608-0808

Assistant U.S. Attorney: Justina Louise Geraci

AUSA's Address: One Saint Andrews Plaza
New York, NY 10007

AUSA's Phone: 212-637-2468

______ Signature

A15

APPENDIX PAGE A16
FILED UNDER SEAL

APPENDIX PAGE A17
FILED UNDER SEAL

APPENDIX PAGE A18
FILED UNDER SEAL

APPENDIX PAGE A19
FILED UNDER SEAL

APPENDIX PAGE A20
FILED UNDER SEAL

APPENDIX PAGE A21
FILED UNDER SEAL

APPENDIX PAGE A22
FILED UNDER SEAL

APPENDIX PAGE A23
FILED UNDER SEAL

APPENDIX PAGE A24
FILED UNDER SEAL

APPENDIX PAGE A25
FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 13 CR 167 (RJS)

FRANKLIN NUNEZ,

Defendant.

------------------------------x

New York, N.Y.
December 20, 2018
3:00 p.m.

Before:

HON. RICHARD J. SULLIVAN,

District Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
NI QIAN
Assistant United States Attorney

LEE A. GINSBERG
Attorney for Defendant Nunez

(Case called)

THE COURT: Have a seat. Thank you. Good afternoon.

Let me take appearances for the government.

MS. QIAN: Good afternoon, your Honor.

Ni Qian, for the government. Also at counsel table with me are Probation Officer Jessica Roman and Probation Officer Claudine Brehan.

THE COURT: OK. So Ms. Roman, Ms. Brehan and Ms. Qian.

And for the supervisee?

MR. GINSBERG: Lee Ginsberg, appearing for Mr. Nunez, your Honor.

THE COURT: All right. Mr. Ginsberg.

and Mr. Nunez, good afternoon.

THE DEFENDANT: Good afternoon, your Honor.

THE COURT: Are there friends and family members here?

MR. GINSBERG: Mr. Nunez's wife is here.

THE COURT: All right. So good afternoon.

As I think you know, it's a public courtroom, so everybody is welcome here. I am sure your presence makes a great deal to Mr. Nunez. So thank you for taking the time to be here.

We are here a violation of supervised release. There's kind of long history here which I'll repeat or at least summarized in a moment. But I guess before we do that, I just

wanted to address one issue I spoke to Mr. Ginsberg right before coming out and so I've been advised that Mr. Ginsberg has withdrawn from the CJA Panel.

MR. GINSBERG: That's correct.

THE COURT: We had previously had a hearing at which we discussed the potential conflict that Mr. Ginsberg might have in light of an investigation involving a very different set of facts and a different set of clients.

Mr. Nunez, you may remember that.

I asked you if you wanted to continue with Mr. Ginsberg or if you want a different lawyer; do you remember that?

We talked about what the potential conflict might at least theoretically. It could be the case that Mr. Ginsberg would be trying to curry favor with the government and not be as zealous in representing you because he was trying to keep the government at bay in the event that he night potentially be charged by then. At least that's the potential.

THE DEFENDANT: Yes, your Honor.

THE COURT: And you indicated you wished to continue with Mr. Ginsberg; do you remember that?

THE DEFENDANT: That's correct.

THE COURT: Had you a chance to think about it and to discuss it; do you recall that?

THE DEFENDANT: Yes, your Honor.

THE COURT: So what I have been advised is that in the interim the U.S. Attorney's Office has concluded that they're not going to charge Mr. Ginsberg. Seems Mr. Ginsberg has no incentive to curry favor with the government. So I am not aware of any need for an additional Curcio hearing or any need to revisit the one we had.

But in light of the new development that Mr. Ginsberg has going forward decided to or agreed to withdraw from the panel of lawyers who are otherwise available to represent people who can't afford attorneys. I just want to make sure that that hadn't changed your mind.

Do you have any questions or any concerns about using Mr. Ginsberg going forward?

THE DEFENDANT: No, I don't.

THE COURT: Ms. Qian, do you have any.

MS. QIAN: None, your Honor.

THE COURT: I don't either. I think I've summarized what the conflicts are. Whether or not Mr. Ginsberg should or can continue on the CJA Panel is not my decision. It's his ultimately and the district court's. But I don't see a conflict here that would require us to stop have a hearing or appoint new counsel.

So we are going to go forward continue, OK, Mr. Nunez?

THE DEFENDANT: Thank you.

THE COURT: That's okay. I just want to make sure we

are clear.

Mr. Ginsberg, anything else you want to make clear on the record?

MR. GINSBERG: No, your Honor. That's fine.

THE COURT: All right. Let me just remind everybody about why we are here today. So back in 2013 Mr. Nunez was charged with a narcotics conspiracy, a very serious count. If 2014 I sentenced him to a term of 42 months which is well below the sentencing guidelines range, 70 to 87 months.

I also imposed a term of three years of supervised release. Among those conditions were that he comply with all laws, that he not violate any federal, state or local laws, that he participate in substance abuse treatment, that he participate in mental health treatment and some other things as well.

So in 2016 I was advised that Mr. Nunez had in fact been driving while intoxicated, that he was charged with operating a motor vehicle with a blood alcohol content of .08 or higher of one percent, which is the legal limit. Actually, according to what I received from probation he was three times the legal limit and in fact had I guess, hit a couple of parked cars. In any event, we had a hearing on that. We had a conference on that in September. At that point I didn't revoke supervised release. I did require that Mr. Nunez participate in treatment and I made it a condition that he not be driving.

So we then continued for a short time.

Then in 2017, Mr. Nunez advised probation that he was not going to be participating in mental health treatment any more. That was a problem. He also I think tested positive for drugs at one point. Then in November of 2017 he was involved in another driving incident, operating a motor vehicle while intoxicated. So that was November of 2017. At that point then we had a conference in February. At that point he admitted to these specifications, at least some of them. I think all of them and so we then put off sentencing. In the mean time I made it a condition that he not drive, period. He was not to drive at all. I made that very clear as a condition of supervised release while we were awaiting sentencing.

Then after putting off sentencing a couple times -- I think the positive drug test was after that. In any event, I then received information this July that -- I'm sorry. Not July, in October that in early October Mr. Nunez was driving again with a suspended license and without permission in direct violation of my conditions that he was driving a vehicle without an Interlock device that he is required to breathe into that device to determine what his blood alcohol lever is before he could turn on the ignition. He was using a car that didn't have that. But he wasn't allowed to be driving at all under the terms of supervised release before me. So in any event, that was in Brooklyn. That was in the new specifications.

I directed him to appear November 5 and Mr. Nunez did not appear, even though he was aware of that conference. So I issued a warrant at that point. Mr. Nunez was eventually produced here November 21. At that point, Mr. Ginsberg was not available. We had, just a CJA lawyer on duty stand-in and Mr. Nunez denied the violations alleged by probation, three new violations.

I've since received a letter from Mr. Ginsberg indicating that Mr. Nunez wishes now to plead to the three new violations, that he wishes to admit to them and then to proceed immediately to sentencing.

Is that correct, Mr. Ginsberg?

MR. GINSBERG: Yes, it is, your Honor.

THE COURT: Mr. Nunez, is that what you wish to do?

THE DEFENDANT: Yes, your Honor.

THE COURT: OK. You have had a chance to review the violations that are alleged, correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: I read them to you the last time you were here before me in mid-November 21 and you indicated you understood them. At that point you denied them but now you are prepared to admit?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. I'll just go over them with you again but you understand what's going on here today?

THE DEFENDANT: Yes, your Honor.
THE COURT: Is your mind is clear?
THE DEFENDANT: Yes, it is.
THE COURT: All right. Do you feel all right?
THE DEFENDANT: Yes, I feel good. And I apologize for last time that admitting to it just that --
THE COURT: You don't have to apologize for not admitting to it but I am asking you really just whether you are in the frame of mind where you can go forward today. Do you think you are?
THE DEFENDANT: Yes.
THE COURT: Have you had any alcohol, drugs, medicine, pills of any kind the last two days?
THE DEFENDANT: My medicine.
THE COURT: What medicine is that?
THE DEFENDANT: Setraline.
THE COURT: How often do you take it?
THE DEFENDANT: Twice a day.
THE COURT: And does that affect your ability to think clearly, your ability to remember?
THE DEFENDANT: No. That's for my depression and, but no it doesn't affect me at all.
THE COURT: Your mind is clear today?
THE DEFENDANT: Yes, it is, sir.
THE COURT: Mr. Ginsberg, do you have any doubt as to

Mr. Nunez's ability to go forward with a plea and ultimately sentencing today?

THE DEFENDANT: No, your Honor.

THE COURT: When I say "plea" it's not a formal plea. It's the admission of certain specifications of violations. You have no doubts?

MR. GINSBERG: No doubts.

THE COURT: Ms. Qian, do you have any?

MS. QIAN: None, your Honor.

THE COURT: Let me ask the probation officers since you have had dealing dealings with Mr. Nunez probably more than I have in the last couple of months.

Do you have any doubt as to his mental competence?

MS. ROMAN: No, I do not.

THE COURT: All right. so neither do I.

Let know go through them one at a time. First, that on or about October 14 in Brooklyn, you committed a state crime, use of a vehicle without Interlock device in violation of the New York Traffic and Vehicle law 1198.9D, which is a misdemeanor.

Do you admit or deny that?

THE DEFENDANT: Admit.

THE COURT: The next one says on or about that same date also in Brooklyn, you committed a state crime which is aggravated unlicensed operation of a motor vehicle which is a

different violation of New York Traffic and Vehicle Law. This one is 511.1A.

Do you admit or deny that one?

THE DEFENDANT: Admit.

THE COURT: The last one is on that same date in that same place in Brooklyn without permission of the Court, in violation of a special condition imposed by me, on February 22 you, nonetheless, drove a vehicle.

Do you admit or deny that?

THE DEFENDANT: I admit, sir.

THE COURT: OK. So those are the admissions. You have previously admitted to five other violations related to conduct that took place on November 19 of 2017. Now we are going to go forward with sentencing on all of them. You've been sentenced by me before. You know how this works.

For a violation of supervised release it's a little different because I am mostly sentencing you on the breach of trust. I'm not sentencing you for a drug crime that you committed five years ago. I am really sentencing you for the breach of trust for violating the terms and conditions of supervised release. And in this case that's a real breach because I gave you a below guidelines sentence. I gave you multiple opportunities to sort of get it together on the condition that you not drive. That was the last modification. And you breached that, putting people in jeopardy and certainly

not respecting the conditions imposed by the Court. So that's a pretty serious breach of trust. So that's what we're here to sentence you on.

The sentencing guidelines which I told you about before, I have told you about the book. They're advisory. They are not mandatory here. But in this case the guidelines range for the first violation that you admitted to is four to ten months for the second through eight violations. It's three to nine months. But the maximum is two years I think, right?

MS. ROMAN: Yes, your Honor.

THE COURT: That's my understanding. It is a maximum of two years. The guidelines are a little lower, four to ten months but I am not bound by these guidelines. I can go up to two years. And as I said, when I sentenced you the first time when I came from 70 to 87 months all the way down to 42 months because I was optimistic that you were never going to be back in a courtroom again. I did tell you if you were back in front of me on a violation you would see a different judge and that I would remember that you'd squandered the opportunity that you'd been given. I gave you a 28-month break from the bottom of the range and it seems to me that you've not taken advantage of the opportunity.

I recognize substance abuse a real problem, that you had mental health issues that also have been a struggle. But I can't have you get behind a car and putting people in jeopardy

and I made that clear the last time we were together and you went ahead and did it. So you are just dangerous as far as I am concerned. I don't think you are a bad person but you either lack the will or the ability to control these impulses that make you dangerous and I am not going to have somebody getting killed while you are on supervised release with me.

So my inclination is a two-year term of supervised release. That's what I am inclined to do. I think that's an appropriate sentence in light of the opportunities given before, the breaks given before, the opportunities to correct things before we went forward with violations here, the opportunity to get treatment and to avoid incarceration even in the face of other violations of this kind. Seems to me that we're passed that now and that's what I am inclined to do. But I want to be able to hear from counsel and from probation on this as well.

Mr. Ginsberg, is there anything you'd like to say in connection with sentencing?

MR. GINSBERG: Yes, your Honor. I did submit a number of documents to the Court.

THE COURT: I should make that clear. You submitted on December 13th a letter to the Court that also had a number of attachments including treatment records and materials provided by different treatment providers and I've reviewed all of that.

Then I also have a December 3 letter from the government which I've also reviewed. So that's rounding out what the record is here.

MR. GINSBERG: When I wrote to the Court I think I indicated, I am fully aware of the view the Court might have to take in the situation because Mr. Nunez did have multiple opportunities. In a sense, when he violates, I can't say it's not willful, but he doesn't set out to live his life that way. He ends up in situations where he gets very depressed for various reasons and most recently including the health of his father, I think both of his parents. Gets depressed, drinks or uses drugs and then just doesn't think straight and does things that put other people in jeopardy and also jeopardizes his liberty. Each time he violates it was essentially the same kind of conduct and I tried to point out that there are people who come before the Court on violations of supervised release and they have gone out and committed serious criminal activity, robbers, drug cases. Even after the first one, not that it excuses what he did and not that it makes it not serious but in my thinking it's sort of in a different vein because it's all tied in to his problems with drug abuse, alcohol abuse and mental health.

THE COURT: Look, I think that makes him less culpable than an incorrigible criminal who commits violent crimes. I'm not sure it makes him any less dangerous because whether he

kills somebody with a car or a gun, it won't matter not much to the victim or victim's loved one. All they'll know is this is a man who was on supervised release and who, nonetheless, put other people's safety in jeopardy. So the more culpability -- you have a good point. This is a person who is not, I guess intentionally or at least initially seeking to violate court orders but ultimately, that's what he does. And at the end of the day he is dangerous as a result of it, right?

MR. GINSBERG: Well, I can't say he is not. Of course when he drives it is not in his right mind. It's danger --

THE COURT: How do I keep him out of a car? The last time I made it clear, you can't get in a car. I can quote myself which I don't generally like to do but it was pretty clear because I didn't want to be in a situation where there would be any ambiguity. So I made it absolutely clear drinking and driving, everybody knows you can't do that. But when it's somebody who is on probation, if something were to happen people would say this judge knew about this and these probation officers knew about this. This happened a couple of times and they didn't do anything. It not only risks the safety of people on the street, it also risks the reputation and respect of this institution. I have to be mindful of that too and I am. That's what I said back on February 22nd of this year. So I said you really have to make sure this does not happen again. It can't happen. That's what I said. And then I made it very

clear that he could not drive. The supervisee is prohibited from driving a motor vehicle of any kind until further order of the Court. So I couldn't have been more explicit and yet sure enough, you are here again.

MR. GINSBERG: Well, you said what you said and it was very clear and in response to that what I can say to the Court is just what I said before. Those words of yours escape his mind when he goes into a depression and uses drugs and alcohol. He is not thinking of what the judge said. He is not thinking of I could go back to jail. He is not thinking unfortunately of what could happen if I am driving this car and I'm drinking or using drugs. His mind is just in another state. He will continue to have that problem. If it's curable or not, I don't know. Some issues may resolve themselves and others won't.

It's serious enough that when we first came before your Honor on the original sentence, the original case, we raised the issue to the court that he had earlier on in his life attempted to commit suicide which has happened yet again in this last period of time. And it is no reason to believe it wasn't a real attempt. Fortunately, it didn't succeed but that's where his mind goes. That's how depressed he becomes. And obviously somebody doing that is not really thinking clearly.

He did voluntarily go to Wyckoff Heights Hospital. They had him there for a period of time, treated him, releasee

him and he went directly into the Arms Acres which is the rehabilitation program. Then he is released and I think the day he is released I believe he went to the probation office because he was directed to basically turn himself in.

The question in these cases is for the Court, how can I let somebody continue to do this and then somebody gets hurt? And the system, the court system itself and the judge can be viewed as responsible versus what benefit, if any, is there putting somebody in jail for a serious amount of time.

THE COURT: Well, it means he is not going to kill anybody on the roads in that amount of time. I will sleep better knowing that because he apparently can't or won't follow conditions that prohibit him from getting behind the wheel of a car. So this would be specific deterrence I guess is what we'd call it.

MR. GINSBERG: Surely it would be. And he will still need treatment because he won't get the kind of treatment he needs while he is serving his time. I think that there is really I can say I think my client would like to address the Court.

THE COURT: Yes. I'll give him a chance to do that. I think I would like to hear from probation and hear from the government. If you want to respond to what they have to say, I'll give you a chance and then before I move to sentencing I'll certainly give Mr. Nunez an opportunity to address the

court. He has a right to do that and beyond that he is also welcome to.

MR. GINSBERG: His wife who is present would like the opportunity to speak to the Court. I don't know if the Court wishes to hear from her.

THE COURT: That's OK. All right. I'll allow her to be heard too but let me first hear from the government.

Anything you would like to add?

MS. QIAN: Yes, your Honor. The defendant because he was originally convicted of a Class A felony --

THE COURT: Five year max, is that right?

MS. QIAN: That's correct.

THE COURT: So I misspoke. It's not two year. It's five years.

MS. QIAN: And it can be followed by up to a term of supervised release, a lifetime worth of supervised release. Wanted to clarify that.

And we also want to address Mr. Ginsberg's point about his ability to receive treatment. The government obviously believes that Mr. Nunez would benefit from mental health treatment, from drug abuse treatment but we also think that a term of imprisonment is necessary here for the reasons that your Honor's already articulated based on the defendant's criminal history here and just as an activity and his conduct during this last period of supervised release.

THE COURT: Well, his prior criminal history before the conviction in the 2013 case was a "driving while under the influence" or "driving while intoxicated conviction", right?

MS. QIAN: Yes, your Honor, that's right.

So he has continued that behavior despite numerous warnings from this Court.

THE COURT: And other courts.

MS. QIAN: And the state courts do not continue such dangerous behavior but, nonetheless, has continued to violate and to continue to violate state law. We understand that obviously, he is facing difficult circumstances that he is very troubled by the ill health of his parents that he is facing this mental health condition and substance abuse condition. And we don't, the government doesn't expect that the defendant would be able to resolve any of these issues easily or within a certain period of time. However, he must make an effort to comply with the conditions of supervised release and we just don't believe that he has demonstrated that.

THE COURT: Can I interrupt you just for a second? What's going on with the state case or cases?

MS. QIAN: It is my understanding that there are currently pending and that the sentencing or the proceedings had been adjourned because the defendant because he was in Arms Acre I believe he was unable to attend some of the hearings. So those proceedings have been adjourned indefinitely it

appears.

THE COURT: OK. And then the other question I had was for you in terms of a sentencing recommendation. So your letter I think asks for a sentence within the range, right?

MS. QIAN: That is correct, your Honor.

THE COURT: Which is four to ten months?

MS. QIAN: Yes.

THE COURT: I have indicated I am inclined to go above that. Do you have a different view or is that too high?

MS. QIAN: I think Probation Officer Roman can speak more to that but the government does not object to a above guidelines period of incarceration, followed by a period of supervised release and all the special conditions that have already been imposed to be imposed again.

THE COURT: All right. Thank you.

So let me hear then from probation, Ms. Roman. I am curious to get your views as to what would be an appropriate sentence including what period of incarceration, if any, and whether additional conditions of supervised release would be appropriate.

MS. ROMAN: Mr. Nunez was given various opportunities by the Court and it started at sentencing, you know sentencing him below guidelines. The probation department feels that he needs to receive more than ten months. Again, he was given various opportunities. The two-year sentence that you

mentioned, we think that's a fair sentence, two years, followed by at least one year of supervised release.

THE COURT: I would think longer than that.

MS. ROMAN: OK. And then special conditions to follow which would include a search condition.

THE COURT: I think there's already a search condition. Any new conditions?

MS. ROMAN: No. Everything that was previously imposed.

THE COURT: What about residential treatment program, mental health and substance abuse?

MS. ROMAN: Inpatient program?

THE COURT: Yes.

MS. ROMAN: We can do that as well.

THE COURT: Do you think it's advisable?

MS. ROMAN: We could do -- yes.

THE COURT: OK. Are there programs that you can think of that are suitable for Mr. Nunez?

MS. ROMAN: We have programs that we can send him for six months.

THE COURT: Six months is generally the sort of --

MS. ROMAN: Standard.

THE COURT: All right. Thank you.

Anything else from probation?

MR. BREHAN: No, your Honor.

THE COURT: Anything else you want to say in response to what you just heard?

MR. GINSBERG: No, your Honor. I think I addressed the main issues when I spoke.

THE COURT: OK. Mr. Nunez, as I said, you have a right to address the Court. I don't always allow family members or friends to address the Court but your wife is here. She's been waiting. I don't mind her addressing the Court if she'd like. Do you have a preference as to whether you go first or she goes first?

THE DEFENDANT: I want to go first.

THE COURT: Go ahead. You can remain seated.

THE DEFENDANT: Your Honor, I don't have an order in which to start talking to you. And also like honestly, I do understand I don't deserve to be talking to you because of all the opportunities you gave me but I'll start in this order and please stop me if I'm saying something disrespectful because I'm not meaning to.

THE COURT: I don't think you've ever been disrespectful to me.

THE DEFENDANT: I have a substance abuse problem and a psychological problem which I've been addressing. Me myself when I checked out of the halfway house I personally without nobody, starting going to my treatment because I am interested because I've been going to the counseling a lot and I know I

failed to comply with the things that you told me but jail is not going to do any good to me.

THE COURT: This is not just about you. This is about other people.

THE DEFENDANT: I understand. Please let me explain to you. I've been trying very, very hard and the treatments that I put myself through besides the ones that probation put me, are more intense than the ones that probation -- and Ms. Roman can tell you that I've been juggling a lot of balls here. Like OK, I got to comply with their treatment so I don't violate but there's been conflict of interest.

THE COURT: What do you mean "conflict of interest"?

THE DEFENDANT: Well, I was going to a psychologist, right? The next thing I know the psychologist is calling Officer Roman telling her my things. Even there was a point that she told Ms. Roman that I was supposed to escape to the Dominican Republic or that I left. I don't know. My wife could clarify that. And other personal things. That's my psychologist who I talk about when I was raped when I was kid' that's supposed to be --

THE COURT: I get that but the conditions of supervised release including mental health treatment and I authorized the mental health treatment provider to provide updates and reports to probation. So that wasn't improper.

THE DEFENDANT: She was telling things that are not

even Ms. Roman -- That's why Officer Roman agreed to change her so at that point I am having a therapist. This is somebody I am supposed to trust with my life with the things that I am going through with the things that are popping up inside me. So now who do I trust? As a matter of fact there was a point that started to trust Officer Roman more than my psychologist not to violate but I chose to go to treatment.

THE COURT: Here is my concern, is that you've demonstrated yourself to be dangerous not because you are holding up liquor stores or banks but because you are persistently getting behind the wheel of a car when you are not permitted to and you are driving in such a way that makes you a terrible danger. And you have had multiple interactions with the law you have had multiple interactions with the Court. And at some point, I am sympathetic to everything you've said. I think you are a decent guy and I've told you that before. And I know that you have had a horrible experience in your youth and that you've got issues that you are trying to work through I respect all of that. But at some point my first responsibility is to the innocent lives that could be harmed as a result of your inability to control this impulse, this inability to refrain from driving even when you've been explicitly ordered not to drive, period. That's the focus here right now. I'm not going to sentence you because I think that you're a bad person. I'm not going to impose a jail term for

that. I'm inclined to impose a jail term of two years because that's the way I can be certain that you are not going to hurt anybody. That's the reason.

So, what can you tell me to let me believe that you're not going to hurt somebody?

THE DEFENDANT: Can I please explain to you?

THE COURT: Sure.

THE DEFENDANT: OK, your Honor. Listen, everything like I could sit here and give you a list of excuses why I've done things in the past since I committed my crime but those are excuses. Cause you did tell me clearly do not get behind the wheel. But as you can see, even though it is not a reason. When I got pulled over at that time I was going through a situation with my wife. I moved out. At that time we parked one of our cars close to place where we have a contract with. Since I was living closer than her and I know you told me do not get behind a wheel --

THE COURT: I said you couldn't even move the car from one side of the street to the other. I was so clear on this. I don't know how I could have been more clear.

THE DEFENDANT: And I have so much through my head that, yes, I took the chance and I apologize and I accept responsibility. But -- not that at least. It's not like something -- for not being behind the wheel while I was drinking. I just did something like ran out, like I said

juggling a lot of things -- your Honor, my father was dying in a bed. I mean, I know you -- but listen like me and my wife, we go out everyday to work and she's the one that drives. Listen, there's no words for me to ask you to forgive me to believe me to be honest with you but, your Honor, please what you don't understand is listen, I am being very responsible with my treatment especially now that I finished, this is the first thing in my life that I completed and I learned some things in that program and I grasp of it.

THE COURT: What program?

THE DEFENDANT: The inpatient program that I went now, Arms Acres.

THE COURT: That was just a short stint, right? How long was that?

THE DEFENDANT: Fourteen days. But I was scheduled or I am scheduled to complete it outside which is three times a week and they take my urine three times a week as well. So, and I am still --

THE COURT: They were taking your urine. You were in the inpatient program, right?

THE DEFENDANT: No. But before I went inpatient I also was going outpatient three times a week. And then that's when I decide to check-in.

THE COURT: You checked in when you knew there was a warrant for your arrest.

THE DEFENDANT: I even called Mr. Ginsberg -- Ms. Roman said that --

THE COURT: Wait a minute. You knew you had to be here November 5th. You were told to be here November 5th. You didn't show up November 5th and instead you went and decided to check yourself into some place. You don't get to do that. You don't get to just decide what orders you are going to follow and which one's you're not. I want to be very clear on that. That's what happened.

You then went into Arms Acres. Sounds like a good program. You were there for two weeks. This has been going on for months and months. So nothing in it so far leads me to believe you are not still a danger to innocent people. Unless I have -- that's the sentence I intend to impose.

So is there anything else you want to say?

THE DEFENDANT: Yes. Please, your Honor, I wasn't trying to trick the law. I didn't even know that -- me checking into a program. My wife will tell you I was going through an episode at that point and I went to the hospital. From there I spoke to the case manager and checked into Arms Acre never trying to trick the law, your Honor.

THE COURT: I'm saying that you seem to think that the conditions of supervised release are ones that you can bend.

THE DEFENDANT: No.

THE COURT: It doesn't work that way and it makes you

dangerous.

THE DEFENDANT: I didn't do that. I did it because really I needed it.

THE COURT: All right.

THE DEFENDANT: Please, I don't know how to explain this to you like if this happens to me right now. My, whatever I have is going to crumble, sir. My father is dying. I need my family, sir. I am asking for something else. She's the one that does the driving, sir. Like I have achieved so much after I've been out besides my addiction, sir. And I am very committed to my treatment so much that I am going to more treatment than what the Court imposed me on my own.

THE COURT: All right.

THE DEFENDANT: On my own, your Honor. If I show you all the things the we achieved right now even though my wife -- but listen, we have something beautiful going on, your Honor. I am not out there trying to commit a crime.

THE COURT: I'm not sure you are trying to do it. My concern is that you are going to injure somebody.

THE DEFENDANT: Your Honor, I'm not doing that. She is the one that does the driving.

THE COURT: She wasn't the one doing the driving.

THE DEFENDANT: We go in the van --

THE COURT: I think I understand your point. Let me here from your wife.

Pull that microphone a little closer to you. Thank you. And then if you could state your name and spell your name for the record.

MS. PENA: Eridania Pena.

THE COURT: Ms. Pena?

MS. PENA: P-E-N-A.

THE COURT: OK. So, Ms. Pena, thanks for being here. People can get nervous when they speak in court. So just be aware that you need to speak nice and slow so the court reporter can get everything down. Take a deep breath and then tell me what you'd like to say.

MS. PENA: Well, when on the 20th of November when I went to pick up my fiance I saw him like a new man in that treatment and I couldn't believe that. I said you look --

THE DEFENDANT: I'm sorry.

MS. PENA: When the other program didn't help enough, I saw him like he changed. Like he looked like a new man and he was talking the future, what he is going to do, never, ever gonna be behind a wheel. And he was saying that he is going to be a better husband and be a better son for his father and his mom and he was looking so like new. He wanted to do it. He don't want to be like before and he saying, yes, I want to be the new man. I don't want to do this again. Cause he hurt me, hurt my family, hurt you. And you the one the stay here with me even if my father is in DR, you the one that helped me so I

want to be better for you. And I can notice on his face that he want to be the best man in this world.

THE COURT: All right. Well, thank you. I appreciate that. It's good to hear from people who know him better than I do. I don't know him as well as you do for sure. So this is helpful.

All right. Is there anything else you wanted to say?

MS. BREHAN: Nope.

THE COURT: All right. Thanks a lot. Have a seat.

Let me tell you the sentence I intend to impose and my reasons for it. Let me begin by saying that I understand from Ms. Pena and from a lot of other people including people who aren't in the courtroom that what happens here today has an impact on a lot of other people.

Mr. Nunez, as I said before, I think is a good person. He is a person who is worthy of concern. I am concerned about him and I think there's lot there that's admirable. I recognize that what's going on here today is causing a lot of pain to Ms. Pena and to other people too and I wish that weren't so. I wish there were something I could do to somehow insulate innocent people from the consequences of the violations of others. But that's just not how it works. We're all connected. People have relationships and as a result of those relationships the suffering of one is felt by others too and that's clearly what's going on here today.

I sentenced Mr. Nunez a long time ago and I went back to take a look at what I said and what he said and I remember that day very well. I remember him saying please give me the opportunity that I need. That's all I can tell you, your Honor. Give me that opportunity. And so I went well below the guidelines because I thought, well, this is a guy who I think different than many of the others that I've sentenced for this kind of a crime. I said seems to me -- this is again, back in February of 2014 -- seems to me you are somebody who's been trying to do right, has had some challenges, some difficulties, mental health, substance abuse treatment needs. I get all of that but you've been trying to do it right, trying to be a good parent to your children, good spouse, good son and I think that matters.

But then I said I have to consider whether you're going to do this again. At that point you said, I don't think so. Your letters we reflect that. I did say I think you are a decent guy. I think you have a family that needs you. I reminded you that you engaged in a really bad crime. It was a drug crime. But I thought that ultimately a sentence of 42 months was appropriate with credit for the time you've already served, in light of who you were, in light of the history that you had, in light of your need for treatment, I thought that was the lowest sentence I could impose that met the different objectives of sentencing.

But I did tell that you supervised release was going to include conditions and that you would have to comply with them. I said those have to be complied with. And you will find that if you don't comply with them you will find a very different judge when you get resentenced. I told you you have to take this seriously. And then you were back in front of me and at that point I still thought that, well, we can manage this. We can get you treatment. We can deal with the substance abuse which is the real problem. This is not a guy who is just constantly committing violent crimes or drug crimes. This is a guy whose got issues that are preventing him from succeeding. So I thought, well, let's get you into the right program. Let's get you treatment so that you can improve and not be a danger.

But that didn't take and you were back again after again getting behind the wheel while you were intoxicated and again getting into an accident. And even then I thought, well, let's see if we can put off the sentencing and see if you can turn it around. But I made it clear, you cannot drive, you may to the drive period, is what I said. I didn't want there to be any ambiguity. You can't be driving. Even if it's just to move the scar for parking from one side of the street to the other, you can't do that. I made that crystal clear. I was absolutely shocked to see that you were driving arrested in Brooklyn.

Where does Mr. Nunez reside?

MS. ROMAN: He resides in Queens now but at that time he was arrested he was living with his aunt. He had left her house and moved out.

THE COURT: But in any event, driving a car that you weren't allowed to be driving, that you didn't have a license for, again, in just complete contravention of the conditions of supervised release and I just, I can't allow it. It's not that I don't think you are trying to get better or trying to deal with these issues. It's that I don't have confidence that I can rely on you not to get behind the wheel of a car and drive and put other people in jeopardy. And I have to put their safety first. So I am persuaded as I was when I took the bench this afternoon that a sentence of two years is appropriate. It will give me at least the assurance that you are not going to hurt anybody in the interim. OK?

Mr. Nunez, you've got to pull it together. OK? So that's the sentence I intend to impose. I am then going to impose a lifetime term of supervised release with all conditions I've previously imposed as well as --

THE DEFENDANT: (Speaking Spanish).

THE COURT: Mr. Nunez, your lack of control I think is prove proving everything I've said. So, pull it together. All right?

THE DEFENDANT: Yes, your Honor.

THE COURT: The additional condition is that you participate in an inpatient mental health and substance abuse treatment program to be approved by probation that shall be for six months. After that you will participate in inpatient treatment program for mental health and substance abuse which is already is a condition of your supervised release.

So that is the sentence that I intend to impose. Is there any legal impediment to my imposing sentence?

MS. QIAN: We don't believe so, your Honor.

MR. GINSBERG: No, your Honor.

THE COURT: Let me ask you to stand, Mr. Nunez. Thank you.

Mr. Nunez, having previously sentenced you below guidelines to the sentence I imposed back in February of 2014, having now determined that you've engaged in eight separate violations of the conditions of your supervised release, I sentence you as follows:

I sentence you to a term of incarceration of 24 months with credit for time you've already served, to be followed by a term of supervised release of life, with the following -- well, all the conditions I've previously imposed. Would you like me to recite them all again?

They are that you not commit any federal, state or local crimes of any kind, that you not possess or use any kind of controlled substance, that you will be supervised in the

district of your residence. You will assist and cooperate in the collection of DNA as directed by the probation office.

There are standard conditions, 13 in all. They are imposed in every case. I am imposing those here as well, along with the following special conditions, all which were imposed before except for this one, which is you will participate in an inpatient drug treatment program to be approved by probation of six months to be followed then by outpatient treatment for the duration of your supervised release or until probation and treatment providers persuade me that it's no longer necessary.

You are to assist in the costs or covering the costs of the treatment programs if you can. So if you have access to insurance or other means, then I will ask to you help defray the costs of those programs. But if you can't, then the Court will bear the cost of those programs because I think it's crucial that you take advantage of those programs.

You are to submit your person, your residence, your place of business, your vehicle, phones, iPads, anything like that, you are to submit to a search of those things in the event the probation officer believes there may be evidence of a crime or evidence of a violation of supervised release. That's nonnegotiable. You don't get to decline.

You do have an obligation to tell any adults with whom you reviewed or with whom you share premises that you are in fact subject to such a search requirement. And this so that

those other adults can take steps to protect their own property and their own privacy.

You are not to drive, period, while you are on supervised release without the expressed permission of the Court, of me. So any attempt to drive a vehicle without my permission will be a violation and you'll be right back in the same situation.

You are to report to probation within 24 hours of your release from custody.

So that's the sentence I impose. Is there any recommendation in terms of where Mr. Nunez will be housed?

MR. GINSBERG: As chose to the New York City area as possible so his family can visit with him. I will make that representation certainly. I will also recommend that he be permitted to participate in any substance abuse treatment available at the Bureau of Prisons. So that will be another recommendation I make to the Bureau of Prisons. OK?

Are there open specifications or not?

MS. QIAN: No, your Honor.

THE COURT: OK. So I should tell you, Mr. Nunez, you have the right to appeal this sentence. If you wish to appeal that's something you need to do within two weeks, a least file your notice of appeal within two weeks. Talk to Mr. Ginsberg. He will assist you in filing that notice of appeal if that's something you want to do.

Anything else we should cover here today?

MS. QIAN: No, your Honor.

MR. GINSBERG: No, your Honor.

MS. ROMAN: No, your Honor.

THE COURT: All right. Mr. Nunez, good luck to you. I know it's a hard sentence for you and I'm sympathetic for Ms. Pena as well. I hope ultimately you will be able to understand my reasoning even if not today I have to call it the way I see it and this strikes me as the only just outcome on these facts. All right? So good luck to you.

Let me thank the marshals.

Let's thank the court reporter as well.

(Adjourned)